RECEIVED
SEP 1 6 2005
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| JOHN EDWIN LOUVIERE AND SUSAN ROGERS LOUVIERE | * | CIVIL ACTION NO. 03-1503 |
| VERSUS | * | MAGISTRATE JUDGE HILL |
| AMERICAN HELICOPTERS, INC., ET AL | * | BY CONSENT OF THE PARTIES |

## MEMORANDUM RULING ON
## MOTION FOR PARTIAL SUMMARY JUDGMENT

Pending before the Court is the Motion for Partial Summary Judgment filed by defendants, American Helicopters, Inc. and United States Aviation Underwriters, Inc. ("AHI"), on August 4, 2005 (rec. doc. 62). Plaintiffs, Susan Rogers Louviere, individually and on behalf of her minor daughter, Briann Natalie Louviere ("Louviere"), have filed opposition (rec. doc. 73). For the reasons set forth below, the motion is **GRANTED**.

### Background

On September 12, 2002, John Edwin Louviere was a passenger on a Bell 206B helicopter operated by AHI. The helicopter was en route from Morgan City, Louisiana to an offshore oil production platform in Block 277 of the Eugene Island area of the Gulf of Mexico, which is outside of the territorial waters of Louisiana.

Within three or four miles of the platform, the pilot encountered engine problems. The pilot inflated the helicopter's floats, and landed in the water. The pilot and John Edwin Louviere then exited the helicopter into a life raft. Eventually, they were rescued by a vessel and the helicopter was salvaged by a crane on the vessel.

On August 8, 2003, John Edwin Louviere and his wife, Susan Rogers Louviere, filed a diversity suit asserting claims under Louisiana law for the injuries which John Edwin Louviere allegedly sustained as a result of the incident. The complaint also asserted a loss of consortium claim by Susan Rogers Louviere. Subsequently, John Edwin Louviere died of a drug overdose. Thereafter, Susan Rogers Louviere, individually and on behalf of her minor daughter, substituted herself as plaintiff and added claims for non-pecuniary damages, including pain and suffering, mental anguish and anxiety, loss of enjoyment of life and other hedonic damages, loss of future companionship, loss of love and affection, and grief. (rec. docs. 47, 57).

On August 4, 2005, AHI filed the instant motion for partial summary judgment seeking to dismiss plaintiffs' claims for non-pecuniary damages.

## Summary Judgment Standard

A motion for summary judgment shall be granted if the pleadings, depositions, and affidavits submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56;

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). When the burden at trial rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case. *International Association of Machinists and Aerospace Workers, AFL-CIO v. Compania Mexicana de Aviacion, S.A.*, 199 F.3d 796, 798 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Courts consider the evidence in the light most favorable to the nonmovant, yet the nonmovant may not rely on mere allegations in the pleading; rather, the nonmovant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Id.* (citing *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2458.))

## Analysis

### Applicable Law

AHI asserts that because this action is governed by general maritime law, plaintiffs' non-pecuniary damages are not recoverable. In response, plaintiffs argue that Louisiana law applies, which would allow recovery of these damages.

Alternately, plaintiffs argue that even if general maritime law applies, that plaintiffs' non-pecuniary damages are recoverable. Thus, the first step is to determine whether the general maritime law or Louisiana state law applies to this case.

A party seeking to invoke federal admiralty jurisdiction over a tort claim must satisfy conditions both of location and of connection with maritime activity. *Grubart v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534, 115 S.Ct. 1043, 1048, 130 L.Ed. 2d 1024 (1995); *Sisson v. Ruby*, 497 U.S. 358, 363, 110 S.Ct. 2892, 2896, 111 L.Ed.2d 292 (1990). In order to determine location, the court must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. *Id.* If so, location exists. The parties agree that the helicopter crashed into the Gulf of Mexico outside of the territorial waters of Louisiana. The plaintiffs acknowledge that the location test is satisfied in this case.

Thus, the only issue remaining in order to determine what law applies is whether this case involves a connection with maritime activity. That in turn involves two determinations. First, a court must "assess the general features of the type of incident involved" to determine whether the incident has "a potentially disruptive impact on maritime commerce." *Grubart*, 513 U.S., at 534, 115 S.Ct., at 1048 (quoting *Sisson*, 497 U.S., at 363, 110 S.Ct., at 2986). Second, a court must determine whether the "general character" of the "activity giving rise to the incident"

shows a "substantial relationship to traditional maritime activity." *Id.*

Before determining if the activity at issue is of a sort with potential to disrupt maritime commerce, the court should characterize the activity at issue at an "intermediate level of generality." *Id.*, at 534, 115 S.Ct., at 1048; *Scarborough v. Clemco Industries*, 391 F.3d 660, 665 (5th Cir. 2004). In *Scarborough*, a seaman contracted silicosis after working aboard sandblasting vessels over an eight-year period. The Fifth Circuit characterized his activity at an intermediate level of generality as "injury to a Jones Act seaman due to the negligence of a non-employer." *Id.* at 665. Using that description, the court held "it is clear that the sandblasting activity is of the sort with potential to disrupt maritime activity." *Id.*

In *Coats v. Penrod Drilling Corp.*, 61 F.3d 1113 (5th Cir. 1995), a worker was injured while repairing a jack-up drilling rig located in the territorial waters of the United Arab Emirates. The Fifth Circuit described the incident at issue in general terms as "an injury to a worker while repairing and maintaining a jack-up rig in navigable waters." *Id.* at 1119. With that description, the court determined that "[w]ithout a doubt, worker injuries, particularly to those involved in repair and maintenance, can have a disruptive impact on maritime commerce by stalling or delaying the primary activity of the vessel." *Id.*

While neither of these cases are factually on point, they are instructive. In both

cases, the court, following the requirements of *Grubart*, looked to the general features of the incident at issue, being neither so general so as to not allow for the differentiation of cases, nor so specific so as to be of little help in determining the overall potential for affecting commerce. *Id.* at 1051. Here, the posing of the activity at issue with an intermediate level of generality would be as follows: injury to a non-seaman while being transported in the functional equivalent of a vessel to an offshore production facility (island) to do repair work.

It is clear that offshore production facilities have the potential to disrupt maritime commerce. The failure to properly maintain such structures may lead to discharges into the Gulf, fire or explosions. Any of those potential outcomes have the potential to disrupt maritime commerce. Given the broad interpretation given by the courts to the potentially disruptive impact requirement, this court has no trouble concluding that the activity at issue had the potential for affecting maritime commerce.[1]

Additionally, it appears that the incident in question here had an actual effect on maritime commerce. After losing power, the helicopter was floating in the Gulf

---

[1] *See Sisson* (fire on a non-commercial vessel docked in a marina held to have a least a potentially disruptive effect on maritime commerce) and *Foremost Insurance Co. v. Richardson*, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982) (the collision of two pleasure boats on a navigable inland waterway seldom if ever used for commerce held to have had at least a potentially disruptive effect on maritime commerce).

without power. The pilot and John Edwin Louviere were in a life raft and were rescued by a vessel. The vessel, which was equipped with a crane, salvaged the helicopter. Obviously, the vessel which performed the rescue was a commercial vessel and its main commercial function was disrupted by the rescue, made necessary by this incident. Clearly, the incident at issue in this lawsuit is "within a class of incidents that pose [] more than a fanciful risk to commercial shipping." *Grubart* at 1051. Therefore, the first requirement is satisfied in this case.

The second part of the connexity test is whether the activity giving rise to the incident shows a substantial relationship to traditional maritime activity. In *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986), the Supreme Court held that the use of a helicopter to perform a function traditionally performed by waterborne vessels, that is, the ferrying of passengers from an "island," in that case an offshore drilling platform, was an activity bearing a significant relationship to traditional maritime activity. Similarly, in *LeDoux v. Petroleum Helicopters, Inc.*, 609 F.2d 824 (5th Cir. 1980), the Fifth Circuit held that the crash of the decedent's helicopter, while it was being used in place of a vessel to ferry personnel and supplies to and from offshore drilling structures, bore "the significant relationship to traditional maritime activity which is necessary to invoke admiralty jurisdiction." *Id.*

7

The plaintiffs do not disagree with the court's holding in *LeDoux*, nor do they seek to distinguish the case. Rather, they simply argue that the Court should not reach this second requirement for connexity because the first does not exist. This Court disagrees.

Based on the foregoing, the Court finds that the general maritime law applies to this case. *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864, 106 S.Ct. 2295, 2299, 90 L.Ed.2d 865 (1986).

Non-Pecuniary Damages

Plaintiffs concede that they are not entitled to recover for their own mental anguish and anxiety or pain and suffering in connection with this accident, other than in their claims on behalf of John Edwin Louviere under the wrongful death and/or survival actions asserted. (rec. doc. 73, p. 7). Thus, the only issue remaining is whether plaintiffs are entitled to damages for loss of consortium and/or society.

In *Miles v. Apex Marine Corp.*, 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990), the Supreme Court held that in all actions for wrongful death of a seaman, whether pursuant to the Jones Act, the Death on the High Seas Act, or general maritime law, recovery is limited to pecuniary damages. The Fifth Circuit extended this rule to non-seamen in *Nichols v. PHI*, 17 F.3d 119 (5th Cir. 1994), holding that non-pecuniary losses are not recoverable by an injured non-seaman unless he is a

8

longshoreman injured in state territorial waters. Subsequently, the court relied on *Nichols* to hold that the decedent's family was not entitled to recover non-pecuniary damages where the decedent was a non-seaman and was not a longshoreman killed in territorial waters. *Kelly v. Panama Canal Commission*, 26 F.3d 597 (5th Cir. 1994).

Plaintiffs argues that *Miles* did not adopt a uniform rule for loss of society in maritime cases because it failed to overrule *Sea-Land Services, Inc. v. Gaudet*, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9, *reh'g den'd*, 415 U.S. 986, 94 S.Ct. 1582, 39 L.Ed.2d 883 (1974), and *American Export Lines, Inc. v. Alvez*, 446 U.S. 274, 100 S.Ct. 1673, 64 L.Ed.2d 284 (1980). In *Gaudet*, the Supreme Court held that the decedent's wife could recover for loss of consortium in a maritime wrongful death action involving a longshoreman.[2] In *Alvez*, the Court held that an injured harbor worker's wife could recover for loss of consortium under general maritime law.

In *Nichols*, the Fifth Circuit recognized the inconsistency between the deaths and injuries of *longshoremen* in territorial waters, where loss of consortium is available under *Gaudet* and *Alvez*, and deaths and injuries of longshoreman on the high seas, where it is unavailable under *Miles*. (emphasis added). *Id.* at 123. However, it noted that until the Supreme Court resolved this inconsistency as to

---

[2]Subsequently, in *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978), the Court limited *Gaudet* to deaths occurring in territorial waters.

*longshoremen*, it had to apply the law as it existed at that time. (emphasis added). Thus, the court held that non-pecuniary losses are not recoverable by an injured non-seaman unless he is a longshoreman injured in state territorial waters. The plaintiffs' arguments overlook the holdings in *Nichols* and *Kelly*; this Court cannot do so.

In this case, there is no evidence that John Edwin Louviere was a longshoreman. Additionally, it is undisputed that the incident at issue occurred outside of the territorial waters of Louisiana. Accordingly, under *Nichols* and *Kelly*, the Court finds that non-pecuniary losses are not recoverable by the plaintiffs in this case.

### Conclusion

Based on the foregoing reasons, the Motion for Partial Summary Judgment is hereby GRANTED, and plaintiff's claim for non-pecuniary damages is DISMISSED.

Signed this 16 day of September, 2005, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE